United States Court of Appeals,

Fifth Circuit.

No. 94-40307.

Nathan Joseph CORMIER, Jr., et al., Plaintiffs-Appellants,

v.

CLEMCO SERVICES CORP., et al., Defendants.

PAULI & GRIFFIN CO., Defendant-Appellee,

v.

AETNA CASUALTY & SURETY CO., Intervenor Plaintiff-Appellant.

March 29, 1995.

Appeals from the United States District Court for the Western District of Louisiana.

Before REYNALDO G. GARZA, GARWOOD and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Nathan Cormier appeals the district court's dismissal as time barred of his Louisiana tort action against the manufacturer of an allegedly defective item of equipment. We agree with at least one of Cormier's arguments and vacate and remand.

I.

Nathan Cormier was employed by Meaux Services, Inc. (MSI) as a sandblaster and painter. In April 1990, MSI sent Cormier to work on an offshore platform owned by Pennzoil Exploration and Production Company (Pennzoil). On April 16, Cormier was injured when his sandblasting hose unexpectedly switched itself on, blasting him in the leg with a burst of sand. Cormier alleges that this accident was caused by a malfunctioning "deadman," the device at the nozzle end of a sandblasting hose that controls the sand

flow. When Cormier's attorney tried through a number of informal means to locate the deadman, he was told by MSI that the deadman was lost. However, MSI's representatives informed him that the deadman had been manufactured by a company called Clemco.

MSI's insurer, Aetna Casualty and Surety Company (Aetna), promptly began to pay Cormier workers' compensation benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.* On February 20, 1991, Cormier filed suit against, *inter alia,* Clemco Industries Corporation and Clemco Services Corporation (collectively "Clemco"). On April 9, 1991, Aetna intervened as MSI's workers' compensation insurer, claiming a right to reimbursement out of any award Cormier received. At the time of its intervention, Aetna was still paying benefits to Cormier.

In May, 1991, Clemco served a subpoena on MSI demanding production of the deadman. Evidently aided by this more formal discovery request, MSI was able to find the hitherto lost deadman. To the surprise of all parties, the deadman that MSI produced was not manufactured by Clemco, but by Pauli & Griffin Company (P & G). On December 6, 1991, Cormier added P & G as a defendant.[1]

P & G argued that, under La.Civ.Code Ann. art. 3492, Cormier's cause of action against P & G was prescribed because it had not been brought within one year of Cormier's injury. Although the district court denied P & G's pretrial motion for summary judgment,

---

[1]The district court granted summary judgment in favor of Clemco on December 5, 1991. This Court affirmed summary judgment in *Cormier v. Clemco,* 969 F.2d 1559 (5th Cir.1992) (per curiam).

the court later dismissed Cormier's complaint as prescribed. Cormier now appeals the dismissal of his complaint against P & G.

## II.

Because Cormier's injury occurred while he was working on the Outer Continental Shelf off the coast of Louisiana, Cormier's case is governed by the Outer Continental Shelf Lands Act (OCSLA). 43 U.S.C. § 1331 *et seq.* Under the OCSLA, Cormier is covered by the workers' compensation scheme established in the LHWCA and by Louisiana's tort law. 43 U.S.C. § 1333. As noted above, Louisiana's one year prescriptive period applies to Cormier's tort claim against P & G. This period is interrupted when an obligor is sued by a claimant, La.Civ.Code Ann. art. 3462, or when the obligor acknowledges liability to the claimant, La.Civ.Code Ann. art. 3464. When prescription is interrupted for one solidary obligor, it is interrupted for all solidary obligors. La.Civ.Code Ann. arts. 1799 and 3503.

Cormier argues that Aetna, as the workers' compensation insurer, and P & G, as the third-party tortfeasor, are solidary obligors under Louisiana law. Cormier further argues that Aetna acknowledged Cormier's right to recompense by paying workers' compensation benefits. Cormier contends that this acknowledgement interrupted prescription against all solidary obligors, including P & G. Cormier maintains that because his suit against P & G was filed within one year of the date of Aetna's payment, his suit is timely.

### A. Aetna and P & G as Solidary Obligors

3

Under Louisiana law, a workers' compensation insurer and a third-party tortfeasor are solidary obligors to an injured employee. See *Williams v. Sewerage & Water Bd. of New Orleans,* 611 So.2d 1383 (La.1993). In *Williams,* the Louisiana Supreme Court held that an employer and a third-party tortfeasor are solidary obligors to an employee hurt on the job and explicitly overruled *Maryland v. Fabco,* 438 So.2d 1152 (La.App. 1st Cir.1983), which decided that a workers' compensation insurer and a third-party tortfeasor are not solidary obligors. P & G contends that a 1987 amendment to La.Civ.Code Ann. art. 2324, post-dating the cause of action in *Williams,* changed the relationship from solidary to joint obligation. P & G relies upon the portion of art. 2324 which reads:

> [L]iability for damages caused by two or more persons shall be a joint, divisible obligation, and a joint tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of such other person ... regardless of such other person's ... immunity by statute.

P & G maintains that this language eliminated solidary liability between third-party tortfeasors and statutorily immune employers.

P & G misunderstands amended art. 2324. Art. 2324 defines only the relationship between joint tortfeasors—those who are jointly liable because they are jointly at fault. However, a workers' compensation insurer is solidarily liable with a third-party tortfeasor not because they both *caused* the same damage, but because they are both obligated to *repair* the same damage. See *Williams,* 611 So.2d at 1387-88 (though employer is liable under workers' compensation law and third-party tortfeasor

4

is liable in tort, both are solidary obligors because both must compensate same injury).  See also La.Civ.Code Ann. arts. 1794, 1797 and 1798.  Therefore, the narrowing of solidary liability between joint tortfeasors does not encompass the solidary liability that arises in Cormier's case.  Thus, as to the solidary relationship between P & G and Aetna toward Cormier, art. 2324 does not govern.[2]

In addition, art. 2324 was amended again in 1988 to provide that "[i]nterruption of prescription against one joint tortfeasor, whether the obligation is considered joint and divisible or solidary, is effective against all joint tortfeasors." La.Civ.Code Ann. art. 2324-C.  This 1988 amendment insured that the newly altered relationship between joint tortfeasors was still subject to the traditional rule on interruption.  P & G's argument that art. 2324-C does not apply because Cormier's employer is not a joint tortfeasor borders on sophistry.  Either Cormier's employer (and thus, Aetna) is subject to art. 2324 or it is not.  Consequentially, even if art. 2324 changed the relationship between Aetna and P & G to one of joint liability, Aetna's acknowledgment would still interrupt prescription as to P & G.

B. Payment of Compensation Benefits as Acknowledgement

In a case almost identical to Cormier's, the Eastern District of Louisiana held that an employer's voluntary payment of workers'

---

[2]In the event that Cormier eventually receives a judgment, we do not address the effect that MSI's proportion of fault may have on Aetna's recovery of benefits it paid under the LHWCA. See *Gauthier v. O'Brien,* 618 So.2d 825 (La.1993).

compensation benefits interrupted prescription against a third-party tortfeasor. *Billizon v. Conoco Inc.,* 864 F.Supp. 571 (E.D.La.1994) Like Cormier, Billizon was injured on a platform off the Louisiana shore and received workers' compensation payments from his employer under the LHWCA. More than a year after his injury, Billizon filed suit against a third-party tortfeasor. Billizon argued that his employer's payment of workers' compensation had interrupted prescription against the third-party tortfeasor.

The district court agreed. The court first held that under *Williams,* Billizon's employer and the third-party tortfeasor were solidarily liable. The court next decided that by voluntarily paying workers' compensation, the employer had " "perform[ed] acts of reparation or indemnity, [made] an unconditional offer or payment, or [lulled] the creditor into believing that [the employer] will not contest liability,' " and thus tacitly acknowledged Billizon's right to recovery. *Id.* at 574 (quoting *Lima v. Schmidt,* 595 So.2d 624, 634 (La.1992)). The court reasoned that:

> the consequences in law of an employer who has been sued for workers' compensation do not conceptually differ, then, from those resulting from an employer's voluntary payment of compensation benefits in response to an administrative request. On the contrary, the law should favor such payments, and should not inspire lawsuits simply as a model to interrupt prescription.

Id.

The *Billizon* Court recognized that its decision would allow an injured employee to file suit against a tortfeasor within one year

6

of the employer's last compensation payment, even if that payment occurred many years after the injury. However, the court explained that:

> [t]he Louisiana Supreme Court has specifically stated that the common law doctrine of laches does not apply in Louisiana and that prescription periods are the province of the legislature. *Picone v. Lyons,* 601 So.2d 1375, 1377 (La.1992). In that case, the high court held that interruption of prescription against all solidary obligors is rationally related to the state's interest in providing full recovery for tort victims.

*Id.* at 575.

For several reasons, P & G maintains that *Billizon* was wrongly decided. P & G first argues that Aetna's compensation payments did not acknowledge Aetna's liability for all of Cormier's damages, but only acknowledged liability for the amount of each payment as it came due. However, as the *Billizon* Court correctly explained, "the liability for workers' compensation is a unitary obligation for an indeterminate amount, which the law directs shall be made in a series of regular payments." See 864 F.Supp. at 574-75. Thus, Aetna's payments constituted acknowledgement of, and interrupted prescription on, the unitary obligation.

P & G also argues that Aetna's voluntary payments should not interrupt prescription against P & G because of Aetna's position as a subrogee of Cormier. P & G contends that, by interrupting prescription of Cormier's claim, Aetna also preserved its own opportunity to be reimbursed out of Cormier's recovery. P & G asserts that this constitutes a conflict of interest between Aetna and itself and argues that Aetna's acknowledgement should not interrupt prescription against P & G in such circumstances.

7

However, the benefit that a workers' compensation carrier may ultimately gain from an employee's suit against a third-party tortfeasor is far too uncertain and remote to regard the compensation carrier's payment of benefits as a self-serving act designed to preserve its recovery rights. More importantly, nothing in Louisiana law, including the Louisiana Supreme Court's decision in *Williams,* suggests that acknowledgment by one solidary obligor interrupts prescription against other solidary obligors only when their interests are perfectly aligned.

P & G next asserts that, under Louisiana law, payment of workers' compensation benefits is not an admission of liability, citing La.Rev.Stat.Ann. § 23:1204. But Aetna did not make its payments under the Louisiana workers' compensation program covered by § 23:1204; Aetna paid under the LHWCA. Thus § 23:1204 has no application in this case.

We essentially agree with the *Billizon* Court's sound analysis. Accordingly, we agree that an insurance carrier which voluntarily pays workers' compensation benefits under the LHWCA acknowledges the employee's right to these benefits and interrupts prescription against all solidary obligors.

## C. Extent of Interruption

P & G argues finally that, even if Aetna's payments interrupted prescription against P & G, interruption was only effective for an amount equal to the extent of the solidary obligation. While this may have been the law at one time, see *Anderson v. Sciambra,* 310 So.2d 128, 131 (La.App. 4th Cir.1975), it

8

is no longer the rule after *Williams.* As *Williams* emphasized, once prescription is interrupted for all solidary obligors, "plaintiffs are free to assert whatever claims they have against the defendants." 611 So.2d at 1384-85. To hold otherwise would contravene Louisiana's stated interest in providing tort victims with a full recovery. See *Lyons,* 601 So.2d at 1377. We conclude that Aetna's acknowledgment interrupted prescription on all of Cormier's claims against P & G.

                              III.

Because Aetna's payment of LHWCA benefits interrupted prescription against P & G, we do not reach Cormier's arguments that the prescriptive period was interrupted by Aetna's intervention or suspended under the equitable doctrine of *contra non valentum.*

The district court's dismissal of Cormier's suit against P & G is VACATED and the case REMANDED for further proceedings.